UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHNSON CONTROLS, INC.,

      Plaintiff,

vs.                                                                    Case No. 02-70433

JAY INDUSTRIES, INC.,                                    HON. AVERN COHN

      Defendant.

_____/

**MEMORANDUM AND ORDER RE: POST TRIAL MOTIONS**

I.  Introduction

     This is a commercial dispute.  The case was tried to a jury for fifteen days during

October and November 2004.  The jury deliberated over the course of three days.

Numerous exhibits were introduced and several witnesses testified.[1]  After several

amendments to the complaint and dispositive motions filed by both parties, the claims

for trial as reflected in JCI's Fourth Amended Complaint were as follows:[2]

     I.      Breach of Contract Returnable Container Program

     II.     Unjust Enrichment - Returnable Container Program

     III.    Promissory Estoppel - Returnable Container Agreement

     V.      Breach of Contract - Long Term Agreement

---

[1]JCI introduced approximately 80 exhibits, Jay introduced approximately 75
exhibits, and the parties submitted some 33 joint exhibits.  Thirteen witnesses testified
for JCI and ten testified for Jay.

[2]Jay asserted a counterclaim against JCI which has been bifurcated.  JCI has
filed a motion for judgment on the pleadings on Jay's counterclaim relating to late
payment, which is pending.

VII.    Breach of Contract - 1994 Agreement

IX.    Breach of Contract - Right to Inspect and/or Remove Tooling

XI.    Breach of Contract - Right to Build Parts Bank

XIII.    Breach of Contract - Settlement Agreement

As to Counts I, II, and III, JCI was time barred from asserting any claim for packaging overcharges which occurred more than 4 years prior to filing suit, or before February 1998.  The claims were broken down for presentation to the jury into three categories: (1) the packaging overcharge claim; (2) the price increase claim; and (3) the market test claim.

As to the packaging overcharge claim, the jury found in favor JCI but also found that JCI failed to notify Jay of the overcharge within a reasonable time.  As to the price increase claim, the jury found in favor of JCI.  As to the market test claim, the jury found in favor of Jay.

The Court entered a stipulated judgment on November 22, 2004 in amounts agreed upon by the parties as a follow up to the jury's decision.

Before the Court are the following post-trial motions:

Jay's Motion for Judgment as a Matter of Law on JCI's Packaging Claims
 - filed Nov. 8, 2004

Jay's Motion for Judgment as a Matter of Law Regarding JCI's Market Test Claims
- filed November 15, 2004

JCI's Motion for Judgment as a Matter of Law
- filed November 15, 2004

Jay's Second Motion for Judgment as a Matter of Law on JCI's Packaging Claims
- filed Nov. 19, 2004

2

Jay's Renewal of Motion for Judgment as a Matter of Law or Alter/Amend
Judgment on JCI's Packaging Claims
-filed Dec. 2, 2004

JCI's Motion for Equitable Relief
- filed Nov. 29, 2004

JCI's Motion to Determine Interest
- filed Dec. 1, 2004

JCI's Renewed Motion for Judgment as a Matter of Law and to Alter or
Amend the Judgment
- filed Dec. 6, 2004

For the reasons that follow, Jay's post trial motions will be granted in part and

denied in part.  JCI is not entitled to recover damages on its packaging overcharge

claim prior to July 8, 2001.  Thus, its damages on the packaging overcharge claim are

$1,402,366 excluding interest.  Jay's motion for judgment as a matter of law regarding

JCI's market test claims will be denied as moot.  JCI's motion for judgment as a matter

of law and motion to alter or amend the judgment and motion for equitable relief will be

denied.  JCI's motion to determine interest is granted.  JCI is awarded pre-complaint

interest on its packaging overcharge claim at a rate of 5% and post-complaint interest at

the statutory rate.

II.  Background

On November 18, 2004, the jury rendered a verdict with respect to three breach

of contract claims brought by JCI against Jay, identified as the packaging overcharge

claim, the price increase claim and the market test claim.  The packaging overcharge

claims are the subject of Jay's motions.  The verdict form is attached.

A stipulated judgment was entered as follows:  the jury found in favor of JCI and

against Jay on the packaging overcharge claim in the amount of $1,810,336 for the

3

period of February 5, 1998 through July 7, 2001 and $1,402,366 for the period of July 8, 2001 - the date JCI notified Jay of the overcharge dispute - through September 14, 2004.  JCI was also awarded pre-complaint interest through and including February 3, 2002 in an amount the Court deems appropriate as well as post-complaint interest from February 4, 2002 though the date of judgment in an amount to be determined by the Court.

As to the unilateral price increase claim, the jury found in favor of JCI and against Jay for $1,411,940 for the period through September 14, 2004, plus interest in the agreed amount of $180,212.

As to the market test claim, the jury found in favor of Jay and against JCI.

As noted on the verdict form, the jury found that JCI did not notify Jay of the overcharges within a reasonable time.

### III.  Legal Standards

#### A.  Motion for Judgment as Matter of Law

That is, judgment as a matter of law "may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party."  Gray v. Toshiba Am. Consumer Prods., Inc., 263 F.3d 595, 598 (6th Cir. 2001).  See also Noble v. Brinker Intern., Inc., 391 F.3d 715, 720 (6th Cir. 2005).

#### B.  Motion to Alter or Amend

The purpose of a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) is to have the court reconsider matters "properly encompassed in a decision on the

4

merits." <u>Osterneck v. Ernst and Whitney</u>, 489 U.S. 169, 174 (1989).  This rule gives the district court the "power to rectify its own mistakes in the period immediately following the entry of judgment." <u>White v. New Hampshire Dept. of Employment Security</u>, 455 U.S. 445, 450 (1982). Generally, three situations justify a district court altering or amending its judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." <u>In re Continental Holdings, Inc.</u>, 170 B.R. 919, 933 (Bankr. N.D. Ohio 1994).  It is not designed to give an unhappy litigant an opportunity to relitigate matters already decided, nor is it a substitute for appeal.  <u>See Sault Ste. Marie Tribe of Chippewa Indians v. Engler</u>, 146 F.3d 367, 374 (6th Cir.1998) (explaining that "[a] motion under Rule 59(e) is not an opportunity to re-argue a case").

IV.  **Jay's Motions**

A.  Motion for Judgment as Matter of Law Regarding JCI's Market Test Claim

    This motion is MOOT in light of the jury's verdict in favor of Jay.

B.  Motion for Judgment as a Matter of Law

Jay argues that JCI cannot prevail on its packaging overcharge claims, whether based on theories of contract, unjust enrichment, or promissory estoppel.  Jay makes six arguments: (1) JCI did not give timely notice of its claims to Jay, (2) JCI waived its claims by its four-year course of performance, (3) JCI's claims are barred by the statute of limitations, (4) there is no evidence that an amortization contract existed, (5) any claims based on unjust enrichment and promissory estoppel fail because an express contract - the purchase orders - governs, (6) JCI's promissory estoppel claim fails because JCI presented no evidence of a clear and definite promise or that it relied on

5

Jay's alleged promise.

JCI responds that (1) it was not required to give notice of its claims to Jay, and even if it was required to give notice, whether notice was given within a reasonable time is a question of fact, (2) any notice requirement does not apply to JCI's promissory estoppel and unjust enrichment claims, (3) its claims are timely under the statute of limitations as this was an installment contract situation, as the Court has previously ruled, (4) there is ample evidence to support the existence of an amortization contract, (5) JCI did not waive its claims by a course of performance, (6) there is a dispute as to whether an express contract governs, therefore, JCI is entitled to assert claims for promissory estoppel and unjust enrichment, and (7) there is evidence supporting a promissory estoppel claim.

C.  Second Motion for Judgment as a Matter of Law Regarding JCI's Packaging Claims

Jay again argues that (1) JCI's failure to give notice bars its claims, (2) JCI's course of performance operates as a waiver, (3) JCI's untimely notice in July 2001 did not effectively retract its waiver and therefore it cannot recover for overcharges after that date, and (4) Jay did not receive notice of strict performance until February 2002. Jay further argues that JCI's claims of promissory estoppel and unjust enrichment must be dismissed as a matter of law in light of the jury's finding that an express contract governs.

JCI argues that Jay is wrong in arguing that it cannot recover for overcharges after notice was given in July 2001, JCI has not waived its post July 2001 packaging claim, and even if it did, it retracted any waiver by giving notice.  JCI also says that based on the verdict, its promissory estoppel and unjust enrichment claims are moot;

6

however, should Jay file a motion to alter or amend the judgment, these claims provide

an alternative ground for JCI's recovery for overcharges before notice was given. Thus,

dismissal of these claims at this time is premature.

D.  Jay's Motion for Judgment as a Matter of Law or to Alter or Amend the Judgment

Jay argues that (1) JCI should not be awarded damages on its overcharge claim

based on the doctrines of waiver or bar, (2) at most, JCI should receive damages only

for parts shipped after February 5, 2002, (3) the jury's finding on notice confirms Jay's

statute of limitations argument, and (4) the judgment should expressly dismiss JCI's

promissory estoppel and unjust enrichment claims.

JCI argues that (1) it was not required to give notice of what Jay already knew,

i.e. the overcharges, (2) even if notice was required, JCI still can recover for pre-notice

payments based on theories of unjust enrichment and promissory estoppel, (3) Jay

cannot avoid disgorgement due to change of position because it knew of the

overpayments

In reply, Jay disputes that it knew JCI was mistakenly overpaying - the evidence

does not support a conclusion that Jay knew JCI was being overcharged. Jay also

argues that JCI cannot recover on equitable claims where the jury found an express

contract governs.

E.  Analysis of Jay's Motions

As the Court understands the parties' varied arguments on Jay's post-trial

motions regarding the packaging overcharge claim, the main issues are (1) whether JCI

was required to give notice of the overcharges, (2) if so, what is the effect of the jury's

finding that JCI failed to notify Jay within a reasonable time, i.e. to what extent is JCI

7

precluded from recovering damages from Jay for the overcharges, (3) whether JCI can maintain its equitable claims in light of the jury's finding that an express contract governs the parties' relationship.  For the reasons that follow, the Court finds that JCI was required to give notice, that the jury's finding that JCI failed to reasonably notify Jay of the overcharges bars JCI from obtaining damages prior to the date it gave notice, and JCI's equitable claims are moot in light of the jury's finding that an express contract governs the parties' relationship.  Each issue will be addressed in turn.

1.  Notice

This issue has generated a great deal of argument on both sides.  Critical to the Court's analysis is the fact that Michigan's version of the Uniform Commercial Code governs the parties' relationship.  The notice issues relates to the application of § 2-607.  Mich. Comp. Laws Ann. § 440.206(3) (§ 2-607(3)) states:

> (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy

The purposes of the UCC's notice requirement are (1) to prevent surprise and allow the seller the opportunity to make recommendations how to cure the nonconformance, (2) to allow the seller the fair opportunity to investigate and prepare for litigation, (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements. American Bumper & Mfg. Co. v. Transtechnology Corp. 252 Mich. App. 340, 346-47 (2002).

Jay says that this section applies not only where a buyer accepts non-conforming goods, but also where the goods are not in conformity as to price, as JCI

8

alleges.  In support, Jay cites <u>Roth Steel Prods. v. Sharon Steel Corp.</u>, 705 F.2d 134
(6th Cir. 1983), where the Court of Appeals for the Sixth Circuit, applying Ohio law, held
that § 2-607 (3) "requires notice with regards to 'any breach' and the same policies
which support a rule requiring notice of breach when a latent defect is discovered also
support a rule requiring notice of breach when performance does not conform to time or
price terms of the contract."  The Sixth Circuit went on to state that " O.R.C. Sec.
1302.65) (U.C.C. Sec. 2-607(3)) requires a buyer, who has accepted a non-conforming
tender, to give notice of breach to seller that he has not performed according to the
terms of the contract."  <u>Roth Steel</u> dealt with a price increase, albeit in the overall
context of a delivery dispute.

Although there is no Michigan case on point, the Court is constrained to find that
§ 2-607(3) applies in circumstances where the goods are non-conforming as to price,
<u>i.e.</u> a price increase or overcharge situation.  Although JCI argues that a reading of § 2-
607(3) shows that it does not apply to pricing disputes, and therefore the common law
of payment by mistake instead applies, the Court finds otherwise.  <u>Roth Steel</u> supports
this finding.  While <u>Roth Steel</u> was decided under Ohio's commercial code, § 2-607 is
identical in Michigan and Ohio.

The Court previously suggested that even if 2-607 applies, there could be an
issue of whether JCI even had to give notice if it is found that Jay knew of the breach,
i.e. it knew it was overcharging and said nothing.  The Sixth Circuit, again applying Ohio
law, has explicitly found that "the express language of the statute [§ 2-607(3)] and the
official comment mandate notice regardless of whether either or both parties had actual
knowledge of the breach."  <u>Standard Alliance Ind., Inc. v. Clawson Co.</u>, 587 F.2d 813,

825 (6th Cir. 1978).  Although a court from another jurisdiction considered the question of whether Michigan courts would require notice when a seller knows of the breach, it ultimately concluded that whether adequate notice was a factual question.  In re Bridgestone/Firestone Inc. Tire Prod. Litig., 155 F. Supp. 2d 1069, 1111 (S.D. Ind. 2001).  It did not hold, as JCI suggests, that a Michigan court would dispense with the notice requirement altogether.

Thus, the Court concludes that 2-607(3) applies to the parties' dispute.  To the extent that Jay argues that notice was unreasonable as a matter of law, the Court disagrees.  The question of notice was properly submitted to the jury as a question of fact.

### 2.  Affect of JCI's Failure to Reasonably Notify Jay

The next issue is whether the jury's finding that JCI failed to reasonably notify Jay in accordance with § 2-607(3) bars JCI from recovering for overcharges incurred since the date on which notice was given.  JCI says that the answer comes from the language of § 2-607(3) itself which applies only "[w]here a tender has been accepted." JCI says that after notice was given in early July 2001, the goods for which JCI was overcharges had been neither tendered nor accepted.  Moreover, because the sales between JCI and Jay were in the nature of installment contracts, each overcharge was a distinct breach and JCI was not required to give notice prior to the occurrence of the breach.  Jay does not adequately respond to this argument, but rather simply argues that § 2-607(3) bars all recovery.  JCI's position is well-taken.  JCI is entitled to recover damages from the time it gave notice.

Although the jury was not presented with the question of when did JCI notify Jay

10

of the overcharges, the Court is satisfied that the record uncontradictedly shows that JCI notified Jay on July 8, 2001 of the existence of the overcharges.

Jay also argues that JCI has waived its right to seek damages for overcharges after July 2001.  The Court agrees with JCI that the record does not support a finding of waiver under § 2-209(5).

### 3.  JCI's Equitable Claims

The final issue is whether JCI's equitable claims for unjust enrichment and promissory estoppel are barred.  JCI concedes that these claims are moot in light of the jury's finding that an express contract governed the parties' relationship, but says that these claims provide an alternate ground to recovery of packaging overcharges prior to notice.  This argument is not well-taken.  The jury found that an express contract governs the parties' relationship.  This finding precludes implying a contract under quasi-contract theories.  See H.J. Tucker & Assoc. v. Allied Chucker and Eng. Co., 234 Mich App. 550, 573 (1999).  Moreover, Michigan courts have interpreted § 2-607(3)'s language of barring a buyer from "any remedy" to include equitable and non-UCC remedies.  American Bumper, 252 Mich. App. at 256-57.  Moreover, because an express provision of the UCC controls, there is no basis for reading for allowing JCI to alternatively recover on quasi-contract or equitable theories.

In sum, Jay's motions are GRANTED IN PART AND DENIED IN PART.  The judgment shall be amended to award JCI damages with respect to the packaging overcharge claim in the amount of $1,402,366 for the period of July 8, 2001 (the date on which JCI notified Jay of the packaging overcharge dispute) through September 14, 2004."  JCI is not entitled to recover the $1,810,3366 in damages for the period of

11

February 5, 1998 through July 7, 2001.  Applicable interest will be discussed below.

V.  <b>JCI's Motions</b>

A.  Motion for Judgment as a Matter of Law and Renewed Motion for Judgement as a Matter of Law and Motion to Alter or Amend the Judgment

JCI moved for judgment as a matter of law following the close of the proofs on the grounds that Jay has failed to present evidence upon which a reasonable jury could conclude that (1) JCI agreed to pay $1.62 for anything other than the use of expendable packaging, (2) there was no amortization agreement, (3) JCI ever agreed to Jay's unilateral price increase claim or that these price increases were made on a commercially reasonable basis.

Following the jury's verdict, JCI renewed its motion for judgment as a matter of law together with a motion to alter or amend the judgment.  Jay filed a joint response to both motions.

JCI argues that the jury's finding that Jay was required to reduce its prices by $1.26 after it received full payment form JCI for the returnable packaging would allow Jay to maintain an ongoing charge of 36 cents from August 1997 to November 2006 and that this result is unsupported by the record and erroneous as a matter of law.  Jay failed to present any evidence that Jay was free to receive an ongoing packaging fee of 36 cents per part.  The record is clear that the $1.26 was not to be deducted from the $1.62; it was to be substituted for it - because the parties were now using expendable packaging.

Jay argues that there is substantial evidence that the 36 cents of the packaging charge was to be continued and the evidence supports the jury's conclusion that the

12

amount of any overcharge was limited to $1.26. The record shows that the parties contemplated the Jay would retain a portion of the $1.62 packaging charge after the amortization period had concluded for handling, sales, general overhead and administration, and profit.

In reply, JCI disputes that there is substantial evidence in the record that JCI agreed to an ongoing 36 cent packaging charge.

### 3. Analysis

In reviewing the motion papers in light of the evidence presented to the jury at trial, the Court concludes that there was sufficient evidence to go to the jury on the issue of the .36 cent reduction and whether there was an amortization agreement, and whether Jay unilaterally increased its prices. Entering judgment as a matter of law following the close of the proofs in favor of JCI would have been erroneous in light of the record; clearly, these issues were for the trier of fact.

Moreover, the jury's finding as to the .36 cent reduction is not unreasonable viewed in a light most favorable to Jay. The amount of the reduction was vigorously litigated at trial, with the introduction of documentary and testimonial evidence. As detailed in Jay's response, the jury could have reasonably found a reduction of only $1.26 after amortization was complete. Such evidence includes the March 19, 1996 memorandum from Todd Gensheimer of Jay to Paul Gerace at JCI. JCI's position that the jury erred in its finding is based on speculation in light of the conflicting evidence. The Court will not disturb the jury's finding. As to the price increase claim, the jury's verdict in favor of JCI moots argument. Overall, JCI's motion will be denied.

### B. JCI's Motion for Equitable Relief

13

1.

JCI argues that Jay refuses to eliminate its overcharges and continues to breach the parties' agreements regarding VN127 pricing.  JCI therefore moves for a permanent injunction precluding Jay from seeking the $1.26 packaging charge on the three new parts or the unilateral price increases on any of the VN 127 parts.  In the alternative, JCI asks for an order for specific performance of the parties' agreements requiring Jay to reduce its prices in accordance with the jury verdict.

Jay argues that the motion should be denied for four reasons: (1) there are no grounds for an injunction or specific performance pending appeal in a simple contract case where a stay can be entered upon posting a bond, (2) JCI never asked for equitable relief in its pleadings or at trial, (3) the U.C.C. does not provide for specific performance under these circumstances, and (4) JCI has not met the requirements to receive such relief.

In reply, JCI disputes that it never requested equitable relief.  Moreover, any stay on appeal to preserve the status quo is to preserve the status quo as reflected in the jury verdict.  JCI also says that it meets the requirements for equitable relief.

2.

JCI's motion is not well-taken.  While JCI requested equitable relief, this is a simple contract dispute in which immediate injunctive relief in the form requested by JCI is not warranted.  An appeal is almost certain.  Jay has secured the judgment through a letter of credit.  JCI's interests are well protected by Jay's posting.  As stated at the hearing on the post trial motions, should the amount of Jay's security become inadequate, JCI may move for an increase in the amount.

14

C.  JCI's Motion to Determine Interest Due to JCI on its Packaging Overcharge Claim

1.

JCI asks the Court to award it pre-complaint and post-complaint interest during the packaging overcharge periods - before and after notice was given.

Jay says that JCI is not entitled to pre-complaint interest, particularly when the jury found that JCI did not reasonably notify Jay.  Jay also says that JCI's method for calculating pre-complaint interest is flawed.

2.

In light of finding that JCI is not entitled to damages as to its packaging overcharge claim from February 5, 1998 to July 7, 2001, interest as to this time period need not be addressed.  What must be resolved is JCI's entitlement to pre-complaint interest and post-complaint interest on its damages from July 8, 2001 to September 14, 2004.

As to pre-complaint interest, although Jay says that JCI should not be entitled to recover pre-complaint interest, the Court finds otherwise.  Pre-complaint interest is a legitimate element of damages where, as here, it is necessary to allow full compensation.  See Gordon Sel-Way, Inc. v. Spence Brothers, Inc., 438 Mich. 488 (1991).  However, it agrees with Jay that it is only entitled to recover pre-complaint interest on its damages occurring after July 8, 2001.

The parties dispute the appropriate interest rate for pre-complaint interest.  JCI's accounting expert, Rod Crawford, maintains that an interest rate of prime plus 1% is appropriate.  Jay's accounting expert, Robert McAuliffe, says that an interest rate of 2.99 % (JCI's average interest rate on short term borrowing during 2001-2004) is

15

appropriate.

Although Michigan has not statutorily provided a rate of pre-complaint interest,
Michigan courts have determined that the appropriate pre-filing rate of interest is 5%
per annum.  See Kenneth Henes Special Projects Procurement v. Continental Biomass
Industries, Inc., 86 F. Supp. 2d 721, 738 (E.D. Mich. 2000); Jones v. Jackson Nat'l Life
Ins. Co., 819 F. Supp. 1382, 1383 n. 1 (W.D. Mich. 1993); Feiler v. Midway Sales, Inc.,
363 Mich. 105, 108 (1961).  Rather than parse out the competing accounting expert's
declarations as to the proper interest rate based on the intricacies of economics, the
Court is satisfied that a JCI is entitled to pre-complaint interest at the rate of 5% per
annum on the sum of $1,402,366 - damages from July 8, 2001 to September 14, 2004.

As to post-complaint interest, Jay does not dispute JCI's entitlement.  Indeed,
M.C.L. § 600.6013 provides that "[i]nterest shall be allowed on a money judgment
recovered in a civil action," and governs the rate of interest to be applied after the filing
of the complaint.  The statute further provides, in pertinent part:

   [F]or complaints filed on or after January 1, 1987, interest on a money
   judgment recovered in a civil action shall be calculated at 6-month intervals from
   the date of filing the complaint at a rate of interest that is equal to 1% plus the
   average interest rate paid at auctions of 5-year United States treasury notes
   during the 6 months immediately preceding July 1 and January 1, as certified by
   the state treasurer, and compounded annually, pursuant to this section. Interest
   under this subsection shall be calculated on the entire amount of the money
   judgment including attorney fees and other costs. However, the amount of
   interest attributable to that part of the money judgment from which attorney fees
   are paid shall be retained by the plaintiff, and not paid to the plaintiff's attorney.

M.C.L. § 600.6013(6).

JCI is entitled to post-complaint interest on its damage award of $1,402,366 in
accordance with § 600.6013.  JCI shall submit an interest calculation in accordance

16

with these findings.

## VI.  Conclusion

### A.

This was a hard fought case.  As to the factual issues raised in the instant motions, the issues presented to the jury were complex as exemplified by the verdict form.  While the Court is mindful of its obligation to examine the jury's verdict to determine under applicable principles whether it should intervene, there is no good basis for it to do so here.  The verdict, as the Court views it, particularly as to the 36 cent issue, was the product of a careful deliberative process and should be looked upon by the parties as fulfilling their expectations when they opted for a jury to settle their differences.

As to the legal issues raised in the motions, the Court is satisfied for the reasons explained above that JCI's recovery is limited, but not entirely precluded, by the jury's finding that JCI failed to provide reasonable notice, that JCI is not entitled to equitable relief in the form it seeks, and JCI is entitled to pre-complaint and post-complaint interest as indicated above.

### B.

For the reasons stated above, Jay's post trial motions are GRANTED IN PART AND DENIED IN PART.  JCI is not entitled to recover damages for its packaging overcharge claim prior to July 8, 2001.  Thus, its damages on its packaging overcharge claim are $1,402,366.  Jay's motion for judgment as a matter of law regarding JCI's market test claims s DENIED AS MOOT.  JCI's motion for judgment as a matter of law and motion to alter or amend are DENIED.  JCI's motion for equitable relief is DENIED.

17

JCI's motion to determine interest is GRANTED. JCI will be awarded pre-complaint interest on its packaging overcharge claim at a rate of 5% and post-complaint interest at the statutory rate.

The parties shall submit an Amended Judgment reflecting the rulings above. If they cannot agree, JCI shall present an appropriate from of judgment for the Court's consideration on notice to Jay which shall have five (5) days to respond.

SO ORDERED.


_____
s/Avern Cohn
AVERN COHN
Dated:     May 13 2005              UNITED STATES DISTRICT JUDGE
            Detroit, Michigan


18